# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

CATHERYNNE W. KENDRICK,
ADC #708204                                                                                      PLAINTIFF

V.                              CASE NO. 1:07CV00025 JMM/BD

NURZUHAL FAUST, *et al.*                                                                DEFENDANTS

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections**:

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the recommendation. A copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

Mail your objections to:

      Clerk, United States District Court
      Eastern District of Arkansas
      600 West Capitol Avenue, Suite A149
      Little Rock, AR 72201-3325

II.     **Background**:

Plaintiff filed this action pro se under 42 U.S.C. § 1983 against employees of the Arkansas Department of Correction ("ADC"). In her original Complaint, Plaintiff claimed: (1) that ADC officials violated her right to receive legal mail and to access the courts; (2) that ADC officials falsely accused her of an escape; and (3) that ADC officials had "interfere[d]" with "child custody."

By Order of this Court dated August 15, 2007, Plaintiff's claim that ADC officials falsely accused her of escape and her parental interference claim were dismissed without prejudice. (Docket entry #31) Plaintiff was allowed to proceed on her claim that ADC officials interfered with her legal mail and right to access the courts, but only as to those against whom she made specific allegations.

Plaintiff's First Amended Complaint and the two Addenda to her First Amended Complaint total almost 250 handwritten pages. (#66, #71, and #74) Reading these pleadings liberally, the Plaintiff alleges that: (1) Defendants violated her right to access the courts by interfering with her legal mail; (2) Defendants used excessive force against her; (3) she was subjected to terroristic threats and public humiliation by Defendants in retaliation for filing the instant lawsuit; (4) Defendants failed to protect her from the sexual assault at the hands of other inmates; (5) her conditions of confinement violate the constitutional prohibition against cruel and unusual punishment; (6) she was forced to serve time in administrative segregation for an unwarranted charge; (7) she was forced to

stand nude in front of male correctional officers on at least one occasion, in violation of her fourth amendment rights; (8) she was discriminated against based upon her gender; (9) she was discriminated against based upon her religion; (10) Defendants violated multiple ADC policies in failing to respond to her grievances in a timely manner; (11) Defendants acted with deliberate indifference to her medical needs; (12) Defendants violated her freedom of speech; and (13) she was denied due process in her disciplinary hearings.[1]  In addition, Plaintiff again states that Defendants falsely accused her of escape.

An evidentiary hearing was held in this matter on October 28, 2008.  At that time, Plaintiff was provided the opportunity to explain her claims and to provide evidence to support those claims.

On June 30, 2009, Defendants filed a motion for summary judgment.  (#338)  In the motion, Defendants argued that each of Plaintiff's claim failed as a matter of law.  The Court granted the motion in part and denied the motion in part.  Plaintiff was permitted to proceed on her claim that Defendant Lavonda Dunavion violated her first

---

[1] Plaintiff moved to have the following claims voluntarily dismissed: (1) her unwarranted placement in administrative segregation; (2) gender discrimination; (3) violation of her first amendment right to freedom of speech; and (4) violation of her due process rights during her disciplinary.  In addition, Plaintiff moved to have Christy Townsend, Martin Pope, and Amanda Dutton-Jackson dismissed as party Defendants.  The District Court granted Plaintiff's motions.  (#376 and #378)

amendment rights by confiscating her Catholic Bible on two occasions and confiscating her rosary beads and religious self-help books on one occasion.[2] (#396)

Defendant Dunavion now has filed a motion for summary judgment on Plaintiff's remaining claims. (#428) Plaintiff has responded to the motion. (#437, #438, and #439)

Based on the evidence presented, the Court recommends that Defendant Dunavion's motion for summary judgment (#428) be GRANTED and that Plaintiff's remaining claims be DISMISSED.[3]

**III.   Discussion:**

    A.   Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing

---

[2] Although Plaintiff was permitted to proceed on her claim that Defendants Dunavion, Dixon, Capel, and Zomant violated her first amendment rights, Plaintiff later moved to dismiss her claims against Defendants Dixon, Capel, and Zomant, which the District Court granted. (#404)

[3] In her motion for summary judgment, Defendant Dunavion also argues that the regulation at issue does not implicate the Establishment Clause of the First Amendment. Because that claim has never been one identified or pursued by Plaintiff, the Court will not address that claim in this recommendation.

that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.") If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322.

    B.    Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that prisoners exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). It does not matter whether the prisoner subjectively believes that there was no point in pursuing his administrative remedies. *Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied 531 U.S. 1156 (2001). If exhaustion is not complete by the time a lawsuit is filed, the Court must dismiss it. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). Prisoners may be excused from completing administrative

procedures, but only when correctional officials have prevented prisoners from using the procedures or when the officials themselves have not complied with the administrative procedures. *Miller v. Norris*, *supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

Here, Defendant Dunavion attaches the affidavit of Tiffanye Compton to her motion for summary judgment. (#428-7)  Ms. Compton testifies that Plaintiff did not exhaust any grievances against Defendant Dunavion pertaining to the confiscation or destruction of Plaintiff's Catholic Bible in April or November of 2007. (#428-7 at p.1)

In response to the motion for summary judgment, Plaintiff claims that she fully exhausted her administrative remedies regarding Defendant Dunavion's alleged destruction of her Catholic Bible in November of 2007.[4]  Plaintiff attaches to her response Unit Level Grievance Form #0701349. (#437-2 at p.1)  In that Grievance, Plaintiff complains that Defendant Dunavion confiscated the following items during a shakedown that occurred on November 19, 2007: (1) tribunal newspapers; (2) a form to complete step two of the grievance process regarding a grievance dated October 18, 2007; (3) American Bible Academy computer exams; and (4) tribunal documents and tribunal

---

[4] Because Plaintiff failed to include any evidence regarding Defendant Dunavion's alleged destruction of her Catholic Bible in April 2007, the Court finds that Plaintiff failed to fully exhaust her administrative remedies regarding this claim, and this claim should be dismissed without prejudice.

paper registration.  (#437-2 at p.1 and #437-3  at p.3)  Importantly, Plaintiff does not mention the confiscation of a Bible of any kind, or a Catholic Bible specifically.

Plaintiff argues that the Court should not find that Plaintiff "failed to exhaust because the form lacked a complete list of the religious material taken, especially considering that the form only allots a one-half page space for a 'brief' description of her complaint."  The Court is not persuaded by this argument.  (#429)

Plaintiff has failed to present any evidence that she was prevented from filing a subsequent grievance relating to either the confiscation or destruction of her Catholic Bible.  Further, in the grievance, Plaintiff did not generally list "religious items" as the items confiscated on November 19, 2007.  The only religious items noted were the American Bible Academy computer exams.  Finally, Plaintiff's failure to include her Catholic Bible in the list of items allegedly confiscated defeats one of the purposes of the exhaustion requirement, in that ADC did not have the opportunity to address and resolve the issue prior to Plaintiff's filing suit.

Because Plaintiff has not presented any evidence showing that she fully exhausted her administrative remedies regarding her claim that Defendant Dunavion confiscated and destroyed her Catholic Bible on two occasions in 2007, she has failed to create a material question of fact on the issue of exhaustion.  Defendant Dunavion is entitled to judgment as a matter of law on this claim.

C.  Rosary Beads and Religious Self-Help Books

In her motion for summary judgment, Defendant Dunavion also argues that the claim regarding the alleged confiscation of Plaintiff's rosary beads and religious self-help books in November of 2007 fails as a matter of law. Defendant Dunavion contends that because Plaintiff was housed in punitive segregation, according to ADC regulations, she was not permitted to keep rosary beads, and was permitted to possess only one religious text. Defendant Dunavion asserts that because the regulation limiting the property that an inmate may possess while housed in punitive segregation is reasonably related to a legitimate penological interest, Plaintiff's claim fails.

As an initial matter, Plaintiff has failed to present any evidence that she actually possessed rosary beads in November 2007. Although Plaintiff claims that Deputy Warden Maggie Capel gave her special permission to possess a rosary while she was on forty-eight hour relief from punitive segregation, other than her own testimony, Plaintiff offers no evidence to support such a statement. (#437-4)

In contrast, Defendant Dunavion attaches to her motion excerpts from Corporal Sarah Martin's deposition in which she testified that "a rosary would not be something that [inmates] would ever be allowed to have in segregation." (#428-3 at p.11) Defendant Dunavion also specifically testified that in the thirteen years she has worked at the McPherson Unit, she cannot recall any inmate possessing rosary beads while in punitive segregation. (#428-4 at p.4)

8

Plaintiff attaches to her response inmate Kathleen Dechant's affidavit, in which Ms. Dechant testifies that she saw Plaintiff praying with her rosary on numerous occasions. Importantly, however, Ms. Dechant does not testify that she saw Plaintiff in possession of her rosary while the Plaintiff was in punitive segregation or while on forty-eight hour relief from punitive segregation.[5] (#437-5 at p.1) Without such evidence, the Court cannot conclude that Defendant Dunavion violated Plaintiff's free exercise rights by confiscating her rosary.

However, even assuming that Plaintiff possessed a rosary on the date in question, her claim still fails. Although the First Amendment protects an individual's right to freely exercise her religion, a prison policy violates the Free Exercise Clause only if it "substantially burdens" an inmate's sincerely held religious beliefs. *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). In *Weir*, the Court explained that in order to be a "substantial burden" on an inmate's free exercise rights, the prison policy "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." *Id*. (quoting *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir.), cert. denied, *Thomas v. McCotter*, 515 U.S.

---

[5] Although Ms. Dechant testifies that Plaintiff's rosary was on Defendant Dunavion's desk in November 2007, Ms. Dechant does not testify that she saw Defendant Dunavion take Plaintiff's rosary from Plaintiff's property. (#437-5)

1166, 115 S.Ct. 2625 (1995)).  Here, the ADC regulation restricting possession of a rosary does not pose a "substantial burden" on Plaintiff's free exercise rights.

Plaintiff has not presented any evidence that she is unable to engage in daily prayers or otherwise to practice the Catholic faith without a rosary.  She has failed to present any evidence that her rosary is necessary for her to engage in an activity fundamental to her faith.  Although Plaintiff claims that without her rosary, she was "unable to pray in the manner essential to her Catholic religion for more than one year," she fails to show that possession of a rosary is necessary to practice her religion.  (#439 at p.8)  Accordingly, Plaintiff has failed to create a material dispute of fact on this issue.[6]

---

[6] In her response to the motion for summary judgment, Plaintiff fails to state how her the limitation on the number of religious texts placed a substantial burden on her free exercise rights.  Accordingly, Plaintiff has failed to create a material dispute of fact on this issue.  Although Plaintiff claims that the confiscation of her Catholic Bible substantially burdens her free exercise rights, the Court previously determined that Plaintiff failed to exhaust this claim.

In addition, although Plaintiff cites various cases in which two other federal courts have acknowledged that preventing inmates from wearing certain religious beads can violate the religious protections afforded by the First Amendment, the Court does not find those cases persuasive.

In the first case cited by Plaintiff on, *Campos v. Coughlin*, 854 F. Supp. 194 (S.D.N.Y. 1994), the District Court, in ruling on a motion for preliminary injunction, determined that the inmate plaintiffs had established a likelihood to succeed on the merits of their first amendment claim challenging a prison regulation prohibiting inmates from wearing Orsha beads to practice the Santeria religion.  The Court came to that conclusion after the inmate plaintiffs testified that they must wear Santeria beads in order to practice their religion.

Similarly, in *Alameen v. Coughlin*, 892 F. Supp. 440 (E.D.N.Y 1995), the District Court, also ruling on a motion for preliminary injunction, determined that plaintiff inmates had shown a likelihood of succeeding on the merits of their first amendment claim challenging a prison regulation prohibiting the display of black dhikr beads after

Even assuming that the ADC regulation prohibiting the possession of certain religious items in punitive segregation placed a "substantial burden" on Plaintiff's free exercise rights, the regulation at issue is "reasonably related to a legitimate penological interest," and that Plaintiff's claim fails, therefore, as a matter of law.[7]

A regulation that infringes an inmate's free exercise rights will survive a constitutional challenge if prison administrators can establish that the regulation is a rational means of furthering a legitimate penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52, 107 S.Ct. 2400 (1987); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987).

In *Turner*, the Supreme Court set out four factors to consider in determining whether a prison policy or regulation that infringes on a first amendment right is permissible: (1) whether a valid, rational connection exists between the regulation and the legitimate government interest; (2) alternative avenues available for the exercise of the

---

the Court determined that the regulations prevented plaintiff from practicing specific daily rituals.
   Importantly, neither of the regulations at issue in the cases cited by Plaintiff addressed inmates housed in punitive segregation and the special concerns raised by inmates housed in segregation.

[7] Plaintiff argues that the *Turner* analysis is not necessary because Plaintiff should have been able to keep her Catholic Bible while housed in punitive segregation. As discussed, however, Plaintiff failed to exhaust that claim. In addition, although Plaintiff claims that she had special permission to possess a rosary while housed in punitive segregation, she has failed to offer any evidence, other than her self-serving testimony, to support such a statement.

right infringed upon; (3) the effect an accommodation would have on others; and (4) the absence of ready alternatives. *Turner,* 482 U.S. at 89-91 107 S.Ct. at 2261-2262.

Here, there is a "valid rational connection" between the policy limiting the property prisoners may maintain while housed in punitive segregation and the ADC's interest in maintaining the safety and security of each unit. Defendant Dunavion explained in her deposition that inmates housed in punitive segregation are not allowed to possess any item they could use to wrap around their necks because of the suicide risk.[8] (#428-4 at p.5)  In addition, Deputy Warden Nurzuhal Faust testified that inmates housed in "punitive segregation are not allowed to have chains, shoelaces, rosaries or any similar item . . . [due to] increased security concerns in addition to higher suicide concerns with inmates who are on this status." (#428-1 at p.2)

Plaintiff has an alternative means available to exercise her rights. Although she could not keep a rosary while she was housed in punitive segregation, she was allowed to keep one religious text. (#428-2 at p.3)  Accordingly, while she might not have been permitted to keep her rosary, she could have continued to engage in daily prayer and scripture reading while housed in punitive segregation.

The Court must also determine what effect accommodating the Plaintiff would have on other inmates and guards. This factor weighs in favor of the Defendant. If

---

[8] Defendant Dunavion specifically testified that in the thirteen years she has worked at the McPherson Unit, she cannot recall any inmate possessing rosary beads in punitive segregation. (#428-4 at p.4)

12

inmates were permitted to keep rosaries while in segregation, the risk of inmate suicide and inmate injuries would rise.[9]

There is no ready alternative available to fully accommodate Plaintiff's free exercise rights while housed in punitive segregation while only imposing a "de minimis cost to valid penological interests." Inmates housed in punitive segregation are not entitled to the same privileges as inmates housed in general population because these inmates require a higher degree of physical control. (#428-2 at p.1) Although these inmates' constitutional rights may be affected, they have been found guilty of committing serious rule violations and, therefore, are being punished for their offenses. (#428-2 at p.1) As a result, their rights may not be fully accommodated while housed in punitive segregation.

## IV.   Conclusion:

The Court recommends that Defendant Dunavion's motion for summary judgment (#428) be GRANTED and that Plaintiff's remaining claims be DISMISSED. Plaintiff's claim regarding the destruction of her Catholic Bible should be dismissed without

---

[9] In her response, Plaintiff argues that because she never displayed suicidal tendencies, she was entitled to the rosary which she had allegedly been granted special permission to possess. (#439 at p.11) As explained, Plaintiff has failed to show that she actually was granted special permission to have a rosary while housed in punitive segregation. In addition, the regulation at issue does not limit the restriction to inmates who have displayed suicidal tendencies. The regulation prohibits the possession of such items based upon the nature of the inmates housed in punitive segregation, *i.e.*, those who are in a more stressful situation.

prejudice. Plaintiff's claim regarding the confiscation of her rosary beads and her religious self-help books should be dismissed with prejudice.

DATED this 18th day of January, 2011.

_____
UNITED STATES MAGISTRATE JUDGE